# Exhibit 1

# SERVICE AGREEMENT FOR ADMINISTRATION OF
# A CLAIMS PROGRAM

This Service Agreement for Administration of a Claims Program dated June 24, 2022 (the "Agreement"), is entered into by and between Sedgwick Claims Management Services, Inc. ("Sedgwick"), and AIPSO, on behalf of the entities listed on the attached Exhibit A ("Client") (Sedgwick and Client together the "Parties").

## RECITALS

1. Client is an insurance industry supported organization that provides services to the State Plans in connection with the automobile residual markets.

2. Client has authority to perform all functions necessary for the production, service and management of insurance policies (the "Policies") issued on behalf of the State Plans.

3. Client requires claims administration services with respect to claims arising under the policies issued.

4. Sedgwick is willing to provide such services on the terms and conditions hereinafter stated.

## AGREEMENT

1. **Services to Be Performed by Sedgwick:** Sedgwick agrees to perform the following services:

    A. With regard to Claims Administration, Sedgwick shall:

    (1) During the term of this Agreement, review all claim and loss reports received from Client that are required to be reviewed under the Program (a "Qualified Claim"), and process each such claim or loss report in accordance with all applicable statutory and administrative regulations, as well as Sedgwick's Auto Service Expectations and the AIPSO Insurance Operations Claims Guidelines Manual.

    (2) Conduct an investigation of each Qualified Claim to the extent deemed necessary by Sedgwick in the performance of its obligations hereunder;

    (3) Arrange for independent investigators, appraisers, or medical or other experts to the extent deemed necessary by Sedgwick in connection with processing any Qualified Claim;

    (4) Pay benefits, expenses, and adjust or settle each Qualified Claim, but only if in the sole judgment of Sedgwick such payment would be prudent for Client and the anticipated amount thereof does not exceed the limit specified in accordance with the applicable SOW, or as Client specifically approves

C/26579

1

or directs such action in writing,

(5) Maintain a file for each Qualified Claim which shall be the property of Client and which shall be available for review by Client during normal business hours upon three (3) days' prior written notice;

(6) Confirm and document within the claim file the applicable coverage and potential coverage issues under the policy

(7) Notify Client for each Qualified Claim where the values may exceed the applicable policy's liability limits unless relieved of this obligation by Client pursuant to paragraph 2A;

(8) Supervise and collaborate with assigned counsel in preparing the defense of litigated cases arising out of Qualified Claims, negotiating settlements and pursuing subrogation or contribution actions;

(9) Maintain adequate reserves that represent a current estimate of the expected total cost of each Qualified Claim which is based on facts known at the estimation date, but is not trended or actuarially developed, and review the adequacy of such reserves on a quarterly basis or upon receipt of documentation that significantly alters the prior assessment;

(10) Use a proprietary data management system to furnish to Client agreed upon loss and information reports. These reports shall contain information such as each Qualified Claim date, condensed claim description, payments made, estimated future costs and total expected costs of all Qualified Claims, as well as summary and other data deemed relevant by Sedgwick, but not IBNR (incurred but not reported) claims or actuarially developed loss values; and

(11) Annually report federal, state and local 1099 information under Client's tax identification number(s), when Client has provided all required IRS authorizations, for vendor payments issued by Sedgwick on bank accounts owned by Client, but not for payment authorizations when Sedgwick does not issue the checks.

(12) Sedgwick shall maintain sufficient staff with the necessary knowledge and expertise to administer the assigned claims, and to provide reasonable management oversight.

(13) Sedgwick shall utilize licensed adjusters, appraisers and licensed private investigators as may be required by the laws and/or regulations of the state under which the claim is administered. All adjusters, appraisers and private investigators shall in the rendering of their services conform to the provisions of all applicable rules, orders, or written interpretations issued

by the applicable regulatory authorities.

(14) Sedgwick shall maintain, in electronic format, closed claim files for a period of seven (7) years from the date the claim file is closed or for any longer period that may be required in accordance with applicable state laws and regulations. Thereafter, Sedgwick will, at the Client's expense, transfer the file to the Client, or to such other party as the Client may specify.

(15) Sedgwick agrees that in the event of an improper claims payment defined as checks issued in the wrong amount, payment to the wrong person or entity, or checks issued in instances where there is no coverage for the loss, it will make every reasonable effort to recover the amount improperly paid. Sedgwick agrees to reimburse the Client for the amount improperly paid no later than sixty (60) days from the determination of an improper payment.

(16) Sedgwick agrees that it will reimburse the Client in the event of an award of interest and/or attorneys' fees incurred as a result of unreasonable delay in issuing a claim related payment. Such payment shall be made within sixty (60) calendar days from the date that the demand for reimbursement is presented by the Client.

(17) Sedgwick shall notify the Client in a timely manner, of the termination, retirement, separation or reassignment of any employee(s) granted remote access.

(18). Sedgwick agrees that it shall make all commercially reasonable efforts to ensure the availability of its data management system. In the event of damage or malfunction, Sedgwick agrees that it will use all reasonable efforts to restore the service to an acceptable level in a timely manner. If claim reporting data as required under this Agreement is not available, Sedgwick will attempt to reconstruct or recover that data from the data management system to restore the service to an acceptable level in a timely manner.

B. Sedgwick will provide the call center services as set forth in the attached Call Center Service Schedule.

C. Sedgwick shall provide the special investigative unit (SIU) services set forth in the attached SIU Service Schedule.

C/26579

3

## 2. Obligations of Client:

A.  1. Upon receipt of loss notices, Client shall verify the existence of an applicable policy and provide such policy information to Sedgwick, including all relevant policy terms and other documents affecting the Client's obligations to policyholders through a policy feed that is automatically uploaded to Sedgwick on a daily basis and which provides the necessary information to verify and document coverage.

   2. The Client will provide an online portal that will allow Sedgwick to have remote access to the Client's repository of underwriting files for the purpose of assisting Sedgwick in its ability to obtain policy level detail. The Client will allow remote access to those Sedgwick employees authorized, in writing, by Sedgwick. The Client will provide such Sedgwick employees with the necessary credentials to procure such access. Sedgwick shall provide the Service Provider with the names, job title and contact information of the employees for whom access is requested at the address specified in Section XIII of the Agreement. Sedgwick may request remote access for additional employees as necessary. The Client shall have the right, in its sole discretion, to limit the number of Sedgwick employees that are provided with remote access. The Client shall have the further right to modify or alter the means of remote access and shall provide notice of any such changes to Sedgwick. The unavailability of the Client's online portal for any reason whatsoever shall not affect Sedgwick's duties and responsibilities as provided in Section 1.A.6. of this Agreement, as the information necessary to perform this duty is available through the daily policy feed as noted in Paragraph 2.A.1. or through direct communication with the Client.

B.  Client shall pay to Sedgwick a service fee which, in the initial term of this Agreement, shall be computed and payable as shown on the attached Exhibit B, plus applicable taxes, if any. Client shall reimburse Sedgwick for the reasonable and customary out-of-pocket expenses incurred by Sedgwick such as travel expenses in conjunction with the services being performed. If Client, in its sole discretion, requests Sedgwick to perform services outside of the scope of work listed herein, then Client shall compensate Sedgwick for such services at Sedgwick's then applicable standard rates for such service.

C.  Client shall at all times provide funds adequate for the payment of Qualified Claims, including allocated loss adjustment expenses. For purposes of this Agreement, allocated loss adjustment expenses shall mean all costs, charges or expenses incurred by Sedgwick, its agents or its employees which are properly chargeable to a Qualified Claim including, without limitation, court costs; fees and expenses of attorneys; appeal bonds; independent adjusters; investigators; appraisers; vocational services, training or evaluation; medical expenses and medical cost containment service providers (including those provided by Sedgwick,

C/26579

4

if applicable); durable medical equipment; rehabilitation services; experts and witnesses; fees for obtaining statements, diagrams, reports, records, documents, transcripts, depositions, Medicare reporting and compliance services fees and costs, index bureau filings and re-filings, and photographs; cost of file retrieval; cost associated with the pursuit of subrogation and/or Special Injury Fund claims; hearing representation services; and travel fees and expenses incurred at Client's request. Sedgwick may, but need not, elect to utilize its own staff or affiliated entities to perform these services. Associated fees and costs will be charged as allocated loss adjustment expenses.

D.  The Client shall promptly make funds available for claim and Loss Adjustment Expense payments and respond to Sedgwick's requests to issue checks in payment of claims. Such checks shall be distributed in accordance with the Client's claims processing procedures.

E.  It is expressly understood that Sedgwick shall not be required to advance its own funds to pay losses or allocated loss adjustment expenses for any Qualified Claim hereunder.

F.  Upon receipt of any form of notice advising of facts which are or may be a Qualified Claim, Client shall promptly assign the Qualified Claim to Sedgwick for management. Client shall promptly provide Sedgwick with such information as Sedgwick may require, including, but not limited to, any copy of documents describing its Program, including but not limited to documents submitted to any legal, administrative or regulatory authority for approval of the Program, as well as incident reports and related information in Client's possession and otherwise cooperate with Sedgwick in carrying out Sedgwick's tasks hereunder.

### 3. Discontinuance of Operations:

Should Client discontinue its business for any reason, all fees due Sedgwick shall be paid immediately.

### 4. Covered Jurisdictions:

This Agreement shall cover all Programs and corresponding states as set forth in the attached SOWs.

### 5. Term of Agreement and Termination:

A.  The term of this Agreement shall be for the period commencing on January 1, 2022 and ending on December 31, 2024.

B.  This Agreement may be terminated by either party at any time, provided that at least one hundred eighty (180) days' prior written notice of the effective date of termination is given to the other party.

C.  Sedgwick is providing services to Client on a life of claim basis. Sedgwick will continue to process Client's Qualified Claims remaining open at the expiration or termination of this Agreement, if any, provided that Client shall continue to make adequate funds available for the payment of such Qualified Claims, including any allocated loss adjustment expenses and pay information technology fees, fees for encrypted data files, program management fees, and any other applicable fees all of which may increase each year during the life of the claims.

D.  Sedgwick acknowledges that all of the files in its possession pertaining to claims under the Policies are the property of the Client and agrees to promptly provide access to or deliver any such file to the Client upon request. Upon expiration or termination of this Agreement, Sedgwick shall deliver, at Client's sole cost, the hard copy and imaged files that Sedgwick has maintained for Qualified Claims (but not including any computer hardware, firmware, software or other proprietary information of Sedgwick), except those Sedgwick has agreed in writing to continue to process or files that are owned by Insurer; provided, however, that Sedgwick or its agents, employees or attorneys shall continue to be entitled to inspect all such files and make copies or extracts there from. Imaged files shall be transferred to Client in the same electronic format. If Client does not agree to accept such files, they will be retained or destroyed at Sedgwick's option and Client shall have no recourse against Sedgwick for failure to retain them.

E.  Should Client terminate the Agreement for convenience within the first twelve months of the Agreement, the Client shall pay Sedgwick fees equal to three months of the service fees. Should Client terminate for convenience within the second twelve months of the Agreement, the Client shall pay Sedgwick fees equal to two months of the service fees. Termination fees are payable within thirty (30) days of the date of notice of such termination.

F.  1. Should Client fail to make timely payments of any service fees due Sedgwick or should Client in any other way breach a material term of this Agreement, Sedgwick shall then have the right to refuse to perform any further services or terminate this Agreement. If Sedgwick elects to exercise its rights under this paragraph, in addition to all other legal or equitable remedies, Sedgwick will have the right to its full minimum fee, if any, as well as any other fees for which Sedgwick may be eligible, and may collect such fees from any loss fund that may be in Sedgwick's care, custody and control.

2. If a material breach by either party of this Agreement occurs, the non-breaching party shall identify the breach by delivery of written notice to the breaching party.

3. Upon delivery of written notification of breach, the breaching party shall have a period of fifteen (15) calendar days within which time the breaching party shall cure the breach. Should the breaching party fail to fully cure the breach within the designated time frame, the non-breaching party may terminate this Agreement: (i) immediately by Sedgwick if breach due to failure to pay fees due

or (ii) by delivery of thirty (30) days written notice of termination to the breaching party.

6. **Professional Advice:**

   Nothing in this Agreement is intended to require Sedgwick to engage in the practice of law, and services provided shall not be considered legal, tax or accounting advice, and Sedgwick shall in no event give, or be required to give, any legal opinion or provide any legal, tax or accounting representation to Client. Client acknowledges that Sedgwick has been engaged to provide certain professional services and that it is not the intent of the Parties that Sedgwick assume any insurance risk. Sedgwick shall not act as an insurer for Client, and this Agreement shall not be construed as an insurance policy; it being understood that Sedgwick is in no event financially responsible for payment or satisfaction of Client's claims, lawsuits, or any form of cause of action against Client from Sedgwick funds.

7. **Indemnification:**

   A. Sedgwick shall be fully responsible for exercising reasonable care at all times in the performance of its obligations hereunder. However, if Sedgwick is named as a party to any litigation or proceeding, or is the subject of any claim or demand because of its actions on behalf of Client, Client agrees to indemnify, defend, and hold Sedgwick, its officers, directors, employees and agents harmless from any and all losses, damages, costs, judgments and expenses (including attorneys' fees and costs) with respect to any such litigation, proceeding, claim or demand, unless and until a finding is entered to the effect that Sedgwick failed to exercise such reasonable care in the performance of its obligations hereunder. Sedgwick agrees to indemnify, hold harmless and defend Client, its directors, officers, employees and agents from and against any and all liabilities, loss or damage that they may suffer as a result of any claim, demand, cost or judgment against them arising out of the negligence or willful misconduct of Sedgwick in connection with its performance under this Agreement, provided that such acts or omissions do not arise out of or relate to oral or written instructions, procedures or forms supplied by Client or to Client's internal management or adjustment of its claims. Each party agrees to keep the other fully informed of any matter for which it is defending, holding harmless or indemnifying the other party. Each party reserves the right to appoint its own counsel, at its own expense, regarding any matter defended hereunder and to approve any settlements of same.

   B. Notwithstanding anything to the contrary contained in the above paragraph, it is understood and agreed that if Client, directly or through a subcontractor or vendor of Client's choosing ("Client Subcontractor"), retains administration of a claim or performs any services for a claim Sedgwick administers, or if Client otherwise directs the administration of a claim, Client will indemnify, defend, and hold Sedgwick, its officers, directors, employees and agents harmless from the losses, damages, costs, judgments and expenses (including attorneys' fees and costs) as a result of any litigation or proceeding, fines, penalties, revocation of license, or any

C/26579                                                7

other state regulatory investigation or action arising against Sedgwick related to the acts or omissions of Client or the Client Subcontractor.

- C.  If Client's access to claim data includes the ability to add and modify data, Sedgwick shall not be required to verify, or otherwise be responsible for, the accuracy of data added or modified by Client. Client shall indemnify, defend and hold Sedgwick, its officers, directors, employees and agents harmless for any loss, cost (including attorneys' fees), claim or judgment which is attributable to Client's input or modification of data.

- D.  Notwithstanding the foregoing, an indemnifying party will not settle a claim without the indemnified party's written consent, unless such settlement results in (i) a full release of all Parties, (ii) no liability to the indemnified party or future obligation of the indemnified party, and (iii) no admission of wrongdoing by Client or Sedgwick.

- E.  The provisions of this section shall survive the expiration or termination of the Agreement.

## 8. Network Security/Confidentiality:

- A.  If Client's access to the data management system requires a network connection (the "Network Connection") between Client's network and Sedgwick's network, Sedgwick and Client shall take reasonable and customary precautions to prevent unauthorized access to or use of the Network Connection through their respective networks. The Parties agree, however, that each party is responsible for the security of its own network. Neither party shall be liable to the other for unauthorized access to the Network Connection, so long as the accused party shall have taken reasonable and customary precautions to prevent such unauthorized access.

- B.  Whether or not marked as such, and without regard to the media in which such records are stored, "Confidential Information" shall mean:

    - (1) any business or technical information pertaining to the Parties or to third parties, which is furnished, disclosed or made available by one party to the other, including, without limitation, specifications, prototypes, software, marketing plans, financial data and personnel statistics;

    - (2) Medical records, reports and information, as well as any other non-medical records, reports or information pertaining to claimants under the Program; and

    - (3) Non-public personally identifiable information of applicants, policyholders, insured claimants and other applicable third parties.

- C.  Each party agrees to protect Confidential Information received hereunder with the same degree of care that such party exercises with its own confidential information

C/26579

8

(but in no event less than reasonable care) and to limit access and disclosure of Confidential Information only to their employees, agents and contractors who have a "need to know," and who agree to maintain confidentiality in accordance with this section. Notwithstanding the foregoing, Client agrees to permit Sedgwick to compile and disseminate aggregate, de-identified information for auditing, compliance, internal assessments, process improvement and related analytics, benchmarking purposes or forward to a data collection facility data for Qualified Claims handled pursuant to this Agreement, provided that such facility agrees in writing to keep Client's data confidential. Further, Sedgwick shall be entitled, without violation of this section and without the prior consent of Client, to retain claims administration information and to forward claims administration information to government agencies to the extent required by law for the proper performance of the services set forth herein with prior written notice to the Client.

D. In the event of any breach or other unauthorized access, use, modification, destruction or disclosure, Sedgwick shall notify the Client in writing as promptly as possible, but in no event later than 48 hours from Sedgwick's determination that such event occurred. Thereafter, both Sedgwick and the Client agree to cooperate in addressing such issues in accordance with the applicable law and/or regulation.

E. The provisions of this section shall survive the expiration or termination of the Agreement.

F. Sedgwick agrees that it shall comply with the terms and requirements of its Disaster Recovery Plan and any amendments thereto.

## 9. Notices:

Any notice required to be given under this Agreement shall be sent by certified or registered mail, postage prepaid, to General Counsel - Americas, Sedgwick Claims Management Services, Inc., 8125 Sedgwick Way, Memphis, TN 38125, in the case of Sedgwick, and to Rachel Holmes, Claims Program Manager – Field Operations, AIPSO, 302 Central Avenue, Johnston, RI 02919, in the case of Client with a copy to General Counsel, AIPSO, 302 Central Avenue, Johnston, RI 02919.

## 10. Assignment:

The Client may not assign its rights or obligations under this Agreement. Sedgwick may assign or subcontract part of the services required hereunder and may at its discretion delegate to a subsidiary or affiliate such of its duties as it deems appropriate, provided that such subcontracting or delegation shall not relieve Sedgwick of any of its obligations hereunder and provided that the Client receives 90 days prior written notice.

## 11. Entire Agreement and Modification or Amendment:

This Agreement and its attached exhibits and schedules represents the full and final

C/26579        9

understanding of the Parties with respect to the subject matter described herein and supersedes any and all prior agreements or understandings, written or oral, express or implied. This Agreement may be modified or amended only by a written statement signed by both Parties.

## 12. Applicable Law:

The terms and conditions of this Agreement shall be governed by the laws of the State of Tennessee without regard to conflicts of law principles. If any dispute or claim arises hereunder that the Parties are not able to resolve amicably, the Parties agree and stipulate that such litigation shall be resolved in the State of Tennessee, and the Parties irrevocably submit to the exclusive venue and jurisdiction of such court for the purpose of any such action or proceeding. In the event of a dispute between the Parties resulting in litigation, the prevailing party may, in addition to any other relief obtained, recover its court costs and reasonable attorney's fees.

## 13. Insurance:

During the Term of this Agreement and thereafter until all claims assigned hereunder are closed, Sedgwick agrees to:

a. Maintain in force a fidelity bond or equivalent insurance, such as Third-Party Crime insurance, for the protection of the Client, in the amount of $1 million or maintain in force an alternative insurance coverage policy, to cover the risk of loss due to the wrongful conversion of any funds and assets of the Client by Sedgwick or its employees or independent contractors during the term of this Agreement with the Client listed as a loss payee;

b. Maintain in force an errors and omissions policy, in the amount of one million dollars ($1,000,000) per occurrence and five million dollars ($5,000,000) aggregate and include the Client as an additional insured.

c. Maintain in force a general liability policy which provides limits of no less than one million dollars ($1,000,000) per occurrence and two million dollars ($2,000,000) aggregate.

d. Maintain in force a Workers Compensation Policy which provides coverage with statutory limits to employees of Sedgwick.

e. Maintain in force a Cyber Liability Policy which lists the Client as an additional insured and which provides limits of no less than five million dollars ($5,000,000).

## 14. Audit:

a. Sedgwick shall maintain books, records, reports and other documents, in electronic or other format relating solely and exclusively to its Claims Administration Services

performed under this Agreement. All such claim files and other documents pertaining to Claims and the services rendered by Sedgwick shall be the property of the Client and be available for review by the Client and its agents or their representatives at a time and place and in a manner mutually agreeable to both Parties. Sedgwick shall cooperate with all such agents or other representatives of the Client during reviews conducted by the Service Provider and/or its agents. The preceding notwithstanding, it shall be a condition precedent that prior to any such review by a third party such third party shall have entered into a nondisclosure agreement with Sedgwick.

b. At any time during the Term of this Agreement, or thereafter, provided the Client is not in default under this Agreement, and at a time and place and in a manner mutually agreeable to the Parties, the Client may conduct, or cause to have conducted, an audit of Sedgwick's operations related solely and exclusively to the services provided hereunder to determine whether Sedgwick has performed its obligations hereunder in compliance with this Agreement The preceding notwithstanding, it shall be a condition precedent that prior to any such audit by a third party such third party shall have entered into a nondisclosure agreement with Sedgwick

c. Audits pursuant to this Section shall be conducted in a manner that does not interfere with Sedgwick's daily operations.

### 14.  Force Majeure:

Neither party shall be liable to the other party or be deemed to have breached this Agreement for any failure or delay in the performance of all or any portion of its obligations under this Agreement if such failure or delay is due to any contingency beyond its reasonable control (a "Force Majeure Event"). Without limiting the generality of the foregoing, such contingency includes, but is not limited to, acts of God, fires, floods, pandemics, storms, earthquakes, riots, boycotts, strikes, lock-outs, acts of terror, wars and war operations, restraints of government, power or communication line failure or other circumstance beyond such party's reasonable control, or by reason of the bankruptcy, receivership or other insolvency proceeding of any bank or other financial institution where funds to pay losses and allocated loss adjustment expenses are held, or by reason of a judgment, ruling or order of any court or agency of competent jurisdiction or change of law or regulation subsequent to the execution of this Agreement. Both Parties are obligated to provide reasonable back-up capability to avoid the potential interruptions described above. If a Force Majeure Event occurs, the party delayed or unable to perform shall give immediate notice to the other party. Client acknowledges that the foregoing provision does not apply to Client's obligation to make timely payment of any fees due Sedgwick, and that Sedgwick shall be entitled to all remedies set forth in this Agreement and those allowed by law for Client's failure to timely pay such fees.

### 15.  Headings:

Headings herein are for convenience of reference only and shall not be considered in any interpretation of this Agreement.

## 16. Relationship of Parties; Expenses:

Nothing contained in this Agreement shall be deemed to create a partnership or joint venture between the Parties; the only relationship among the Parties shall be that of independent Parties to a contract. Except as expressly provided herein, no party hereto shall have authority or shall hold itself out as having authority to act for or bind any other party hereto. Except as expressly set forth herein, each party shall bear all expenses it may incur in connection with the execution, delivery and performance of this Agreement.

## 17. Waiver of Breach:

Failure of either party hereto to require the performance by the other party hereto of any obligation under this Agreement shall not affect its right subsequently to require performance of that or any other obligation. Any waiver by any party hereto of any breach of any provision of this Agreement shall not be construed as a continuing waiver of any such provision or a waiver of any succeeding breach or modification of any other right under this Agreement.

## 18. Subcontractor Disclosure:

Through contractual arrangements with subcontractors, Sedgwick provides a full range of medical management and investigative services to its clients, as well as structured settlements, claim indexing services, imaging, auto-bill adjudication, and extra-territorial claims administration services. Medical management services include, but are not limited to, bill review, network access, pharmacy benefits management, peer review, field case management, electro-medical devices, bone growth stimulators, orthotics, prosthetics, translation and interpretation, transportation, medical supplies, IV and respiratory therapy, home health, and durable medical equipment. Client recognizes and agrees that delivery of some of these services are being provided pursuant to separate agreements between subcontractors and Sedgwick. Invoices for these services will be paid as allocated loss adjustment expenses on individual claims, unless otherwise agreed between Client and Sedgwick. Notwithstanding the foregoing, Client agrees and understands that Client is obligated to make payment to the subcontractors either directly or by remitting such payment to Sedgwick, for any money due for subcontracted services which have been provided under this Agreement. Client acknowledges that Sedgwick receives a portion of charges for subcontracted services as reimbursement for cost of program management, administration, and technological and service enhancements. In no event will charges to Client exceed the amount indicated in the Agreement.

## 19. Equitable Adjustment:

This Agreement contemplates that the standards applicable to this Agreement are those in effect on the date of this Agreement, whether such standards are set forth in statutes, regulations, rules, orders, case law or otherwise. In the event of a material change in a service standard, Sedgwick shall be entitled to an equitable adjustment in its compensation if such change increases Sedgwick's cost of providing the services under this Agreement.

Case 3:26-cv-00173    Document 1-1    Filed 02/17/26    Page 13 of 15 PageID #: 37

20. **Non-Solicitation:**

   Client acknowledges and agrees that Sedgwick personnel who perform the services are a valuable asset to Sedgwick and difficult to replace. Accordingly, Client agrees that, during the term of the Agreement, and for twelve months thereafter, it will not solicit, contract or hire Sedgwick personnel or encourage them to seek employment or any other contractual arrangements with Client. The Parties further agree that in the event Client breaches the provision of this Section, Client shall pay Sedgwick liquidated damages in the amount of two times the annual compensation to be paid to such person for each such breach, which is the Parties' good faith estimate of the amount of damages to Sedgwick from such breach. This Section shall survive the termination of this Agreement.

21. Neither party shall utilize the other party's trade names, logos, trademarks, service marks or other identification in any press release, advertisement, marketing material, promotional literature, article, presentation or other type of communication, without the prior written consent of such party, which consent may be withheld or denied in such party's sole discretion.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed on the dates written below.

AIPSO

By _____

Title __President__

Date __June 28, 2022__

Sedgwick Claims Management Services, Inc.

By _J. Edward Peel_

Title __Vice President__

Date __June 24, 2022__

Case 3:26-cv-00173   Document 1-1   Filed 02/17/26   Page 14 of 15 PageID #: 38

# EXHIBIT A

## SERVICE PROGRAM OVERVIEW

### I. Introduction

Sedgwick administration of automobile claims for Client as follows:

Personal Auto Program (PAIP): Alabama, Alaska, Arkansas, California, Georgia, Hawaii, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Minnesota, Mississippi, Missouri, Nebraska, North Dakota, Ohio, Oklahoma, Rhode Island, South Dakota, Tennessee, Virginia and Wisconsin.

California Low Cost Auto

Commercial Auto (CAIP):

Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, Washington, West Virginia, Wisconsin, Wyoming and the District of Columbia.

### II. Account Coordination

On behalf of Client, this service program will be coordinated by:

> **Client Representative: Rachel Holmes, Claims Program Manager**
> **Client Name: AIPSO**
> **Client Address: 302 Central Avenue, Johnston RI 2919**
> Telephone # (401) 528-1365

On behalf of Sedgwick, this service program will be coordinated by:

> **Sedgwick Representative: Bonnie McCarthy-VanDunk, Client Services Director**
> **Sedgwick Office Address: 825 Sedgwick Way, Memphis TN 38125**
> Telephone # (973) 404-1280

Each party reserves the right to change its designated representative during the term of the Agreement.

C/26579                                                14